UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JILLIAN HETSKO-SHEA,<br><br>                    Plaintiff,<br>   -against-<br><br>CEROS, INC.,<br><br>                    Defendant. | Case No.:<br><br>COMPLAINT |

Plaintiff Jillian Hetsko-Shea, by her attorneys, Crumiller P.C., as and for her complaint against Ceros, Inc., respectfully alleges as follows, upon information and belief:

## PRELIMINARY STATEMENT

1. For three years, Plaintiff Hetsko-Shea was a top performer, and one of few women on Ceros's sales team.

2. During her tenure, Hetsko-Shea adopted a child, and the company failed to inform her that she was entitled to take parental leave and deprived her of priceless bonding time with her child.

3. Hetsko-Shea proved herself to be an invaluable asset to the company repeatedly.

4. Yet, instead of compensating her fairly for her work, Ceros told her she had to choose between "motherhood and management," refusing to promote her while instead promoting the men she outperformed.

5. After years of sexist mistreatment, Hetsko-Shea confronted her manager about the injustice. Two months later, she was summarily fired.

## PARTIES

6. Plaintiff Hetsko-Shea is an individual who resides in the State of Pennsylvania. She was employed by Ceros, Inc. from May 2020 to April 12, 2023.

7. Defendant Ceros is a foreign limited liability company incorporated in Delaware with a registered address of 40 W 25th Street, 12th Fl, New York, NY 10010. Ceros is a software company that provides digital marketing tools to corporate clients.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1), 1343, and 1367.

9. Venue is proper pursuant to 29 U.S.C. § 1391(b)(2) as the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

10. On July 29, 2023, Hetsko-Shea filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), asserting claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* ("Title VII").

11. On June 14, 2024, the EEOC issued Hetsko-Shea a Notice of Right to Sue. She timely files this claim within 90 days thereafter.

## FACTUAL ALLEGATIONS

### I. Ceros Recruits and Hires Hetsko-Shea for a Sales Position

12. In August 2020, a professional recruiter contacted Hetsko-Shea on LinkedIn. The recruiter touted an available sales role at Ceros, a cloud-based platform for marketers and designers to create interactive professional content.

13. Hetsko-Shea had been very successful at Argyle, an event company, for nearly five years, where she had worked her way up from Sales Development Representative to Account Executive to Sales Director. In April 2020, she decided to broaden her professional horizons and apply to work at Ceros.

14. After impressing four rounds of interviewers, she was offered the position of New Business Director at Ceros, which she accepted.

15. In May 2020, she began her new role. Her responsibilities included closing pilots, which led to new business deals, as well as delivering client-specific product demonstrations, with quarterly goals tied to both pilots and deals.

16. Ceros's leadership was heavily male dominated. The C-suite was nearly all men. Of approximately 13 New Business Directors, she was one of only three women.

17. And, shortly after she started, Ceros promoted three more men to C-suite positions.

18. Undaunted, Hetsko-Shea quickly acclimated to her new role. She impressed the team by closing multiple deals at the outset of her tenure. That summer, she received a glowing review.

19. However, Hetsko-Shea quickly learned not to feel too secure in her position. In December 2020, Ceros fired a long-time female employee, not for any performance reasons, but simply because Michael Estroff, Head of Sales, did not personally like her. Estroff exhibited no such dislike to any men at the company, many of whom were his personal friends. Hetsko-Shea became conscious of ensuring she was always amenable and friendly toward Estroff.

20. In spite of the extra navigation, Hetsko-Shea continued doing her best. In December 2020, she received yet another positive performance review.

**II.     Ceros Fails to Engage in an Interactive Dialogue Regarding Caregiving Leave**

21. In January 2021, due to personal circumstances, a young girl in Hetsko-Shea's extended family was left without suitable care. Hetsko-Shea and her husband immediately made plans to adopt the child and were thrilled at the prospect of welcoming her into their family.

22. She was transparent at work about the adoption process, which was long and grueling. Nine months later, on October 7, 2021, Hetsko-Shea and her husband were finally able to welcome their new six-year-old daughter to the family.

23. She took one day off to celebrate, then returned to work the next day.

24. As many new parents do, Hetsko-Shea struggled to manage the demands of her job and the caregiving responsibilities for her newly-adopted young daughter.

25. Later that month, Hetsko-Shea confessed to her manager, Director of Sales Kyle Hristov, that since the adoption, she had felt overwhelmed. She told him she felt burnt out and that she "needed a break."

26. Hetsko-Shea was unaware that any sort of leave was available to her, and Hristov did not so advise her.

27. About a week later, Estroff checked in with Hetsko-Shea. She repeated that she felt she needed a break and told him she felt like she was barely keeping her head above water. Estroff simply responded that the last quarter of the year was "a crazy time for everyone."

28. That quarter, to her discouragement, Hetsko-Shea fell short of her expected sales target for the first time.

29. The following month, Hetsko-Shea was told to report to a new manager, Sonia Doades.

30. In January 2022, Hetsko-Shea told Estroff that her manager, Sonia Doades, was exceptionally tough, and that she was struggling with Doades' management style. He responded, "Isn't your success at Ceros in part because of Doades?"

31. Aside from downplaying the accomplishments Hetsko-Shea had achieved before she began reporting to Doades, the comment bizarrely conjured some nonexistent relationship between the two women.

32. In April 2022, another company sought to recruit Hetsko-Shea for a sales position with a significantly higher salary. Hetsko-Shea told Estroff she was leaving the company, explaining that she did not see any upward mobility for her at Ceros.

33. Knowing that Doades would soon be out on maternity leave and leaving him short-staffed, Estroff began convincing her to stay, offering more money and asking what role she was

interested in. She offered several suggestions: Director of Sales, Senior New Business Director, or Enterprise New Business Director. Eager to advance, she suggested, "I could do a trial-run period for the management role. If I don't like it, I would move back to a sales position."

34. Though she could have earned approximately $20,000 more at the other company, Hetsko-Shea agreed to stay when Estroff agreed to her suggestion and promised her a raise. Her responsibilities increased immediately, though Ceros inexplicably failed to implement her raise for another three months.

### III. Hetsko-Shea Endures a Work Retreat Rampant with Sexual Harassment

35. On October 15, 2021, then-CEO Simon Berg announced that Ceros planned to sponsor an all-expense paid trip to Cancun, Mexico, for all employees from July 11 through July 15, 2022.

36. Hetsko-Shea felt uncomfortable at the thought of being minimally clothed and surrounded by intoxicated colleagues. However, she understood that, as a woman at the company, she would face harsher penalty for failing to participate in the "boys club" atmosphere.[1] She agreed to go.

37. On the trip, Hetsko-Shea was sitting by the pool when a newly-hired male colleague approached her, flustered. He explained that a group of the men had been spending extensive time assessing their female coworker's bodies, ranking their attractiveness and identifying which ones were "hot." He relayed that Estroff himself had said, of a female employee who was younger than and junior to him, "She's a looker. I wouldn't kick her out of bed in the morning."

---

[1] On June 15, 2022, shortly after the announcement of the Cancun trip, the New York Post published an article expressing an anonymous female employee's negative views on a forced, all expenses-paid work retreat to Cancun. Jeanette Settembre, *Employees miserable over lavished work retreats, calling them 'forced fun,'* NY POST, (June 15, 5:35 p.m.), https://nypost.com/2022/06/15/companies-are-shelling-out-for-lavish-retreats-and-workers-hate-them/. In this article, the employee explained her discomfort about wearing a bathing suit in front of her colleagues, and recounted that she was forced to sit through an HR spiel about the perils of younger, over-intoxicated employees. The employee explained that she believed she would be fired if she voiced her opposition publicly.

38. Later that week, at a karaoke club, Hetsko-Shea overheard Berg and Estroff talking casually about another younger female employee, who was visibly intoxicated, and how Estroff could not be trusted around her.

### IV.    "Motherhood or Management?"

39. In August 2022, Ceros hired a new interim manager, Dustin Sears, along with three junior reports Hetsko-Shea was tasked with managing. Hetsko-Shea was significantly more knowledgeable than Sears was about the business operations, and he relied heavily on her to help with his duties, but Ceros determined that she should report to him. Worse, Ceros did not pay Hetsko-Shea commissions on the deals the Sears team closed, even though sales managers generally received commissions for their team's work.

40. Hetsko-Shea's one female report quit soon after starting, explaining that Estroff had made promises to her about advancement she realized were false. Her two new male reports were happy to remain at Ceros and she managed them quite successfully. She was pleased to have finally made the transition into management that she had worked so hard to achieve.

41. The next month, September 2022, Hetsko-Shea was on a Zoom call with Sears, who asked her how she liked management. Hetsko-Shea knew her performance was excellent but politely expressed that she felt she was "still feeling things out." Sears then asked her, "Well, what do you want?" Confused, Hetsko-Shea asked what he meant.

42. Sears then asked her pointedly: "Do you want motherhood or management?"

43. Taken aback, Hetsko-Shea felt at a loss to respond. She managed to retort, "I don't have to choose." Sears brushed off the offense he had caused, responding, "of course;" but he then began telling her about how his own wife had opted out of the workforce.

44. It appeared yet again that Ceros's male executives were either unwilling or unable to see past Hetsko-Shea's gender.

45. In October 2022, Hetsko-Shea told Estroff that she was beginning fertility treatment, which would require her to take time off occasionally for medical appointments when she was unable to schedule them outside of work hours. Concerned about potential repercussions, she relayed how Sears had told her that she "had to decide" between motherhood and management.

46. Estroff immediately sought to clarify that Sear's statement did not represent the company's views. However, he then added, "I do tell [a male colleague] that he can have his time on his boat or be a manager."

47. Hetsko-Shea replied that the comparison between motherhood and boating was offensive. She then ended the meeting as quickly as she could to avoid crying in Estroff's presence.

**V.    Ceros Promotes a Less-Qualified Man Over Hetsko-Shea**

48. In November 2022, Sears left Ceros, leaving a management vacancy. Hetsko-Shea took every opportunity to remind Estroff that she was eager and willing to help manage Sears's team, as she had been doing. But Estroff rebuffed her each time, instructing her to "stand down" and that her help was not needed.

49. Instead, Estroff promoted Dan McKenney, another New Business Director, to the role. McKenney was less qualified than Hetsko-Shea, who had more managerial experience and indeed who had successfully managed that very team. But McKenney was one of Estroff's buddies, and Hetsko-Shea was not.

50. Hetsko-Shea was also excluded from help with the company's "2023 Revenue Kickoff," a large sales team initiative, while her counterparts were encouraged to participate.

51. Hetsko-Shea was resolute and committed to excellence. At the end of 2022, not only had she met her quarterly goals, but one of her direct reports, Michael Ciavarella, had closed multiple deals under her supervision and guidance, which was unheard of for New Business Associates.

7

52. On January 30, 2023, Estroff told her that he had officially decided to promote McKenney, and not Hetsko-Shea, to a management role. To add insult to injury, Estroff informed Hetsko-Shea that she was being stripped of her direct reports and they would now also report to McKenney.

53. Hetsko-Shea felt increasingly helpless and frustrated seeing herself fall behind her male peers despite her hard work and stellar results. When she asked why McKenney received a promotion instead of her, Estroff responded with vague references to performance and tenure, but neither supported the decision. Hetsko-Shea and McKenney were of comparable seniority; she had successfully managed two reports, whereas his only report was fired for underperformance.

54. Later that day, Hetsko-Shea learned that two other male colleagues, Matt Lewis and Jason Bansal, had been promoted to Senior New Business Directors.

55. The promotion of Lewis and Bansal over Hetsko-Shea was even less justifiable. Again, they were of comparable seniority. But Hetsko-Shea had consistently generated more revenues than either man – both in the preceding quarter, and in the course of their tenures.

56. Hetsko-Shea realized that no matter how much work she put in, and no matter how much money she made for the company, it would never afford her the respect – or compensation – that her male colleagues enjoyed.

57. Hetsko-Shea called the only woman at the company she could think to call – Doades.

58. When Doades asked Hetsko-Shea how she was handling the news of all the promotions, Hetsko-Shea broke down in tears.

59. She told Doades how hard she had worked to prove herself. How diligently she had worked to train her reports, only to see them handed over to McKenney.

60. She explained how the "player-to-coach" trial period she was in over the previous six months had been sold to her as the path to Senior New Business Director, but Ceros's promises never materialized.

61. Doades sympathized. She told Hetsko-Shea that she had suffered the same experience: Ceros had repeatedly failed and refused to promote her, while lesser-qualified male counterparts sailed effortlessly into managerial roles.

### VI. Hestsko-Shea Confronts Estroff About the Discrimination

62. On February 10, 2023, Hetsko-Shea spoke to Estroff. She relayed how upset she was that she had given up another employment opportunity based on his promises to promote her, and that those promises somehow never materialized.

63. Estroff was visibly annoyed that Hetsko-Shea was showing the audacity to push back on his decisions. He became defensive, arguing, "McKenney worked hard for his promotion." Hetsko-Shea sharply responded, "I worked hard too."

64. Hetsko-Shea told Estroff it was unfair that McKenney received manager's commissions on the deals that her reports closed, having taken over at the last minute, while she received nothing for her months of work. She confronted him about the Lewis and Bansal promotions and the obvious pretext of his "performance" and "tenure" explanations.

65. Estroff dismissed Hetsko-Shea's complaint with the baffing assertion that he was unaware she had any interest in a senior position. She summarized the conversation they had back in April 2022 when he had talked her out of leaving Ceros with promises of advancement. Estroff simply claimed not to remember the conversation.

**VII.   Things Get Worse**

66. Hetsko-Shea had hoped Estroff would realize that she was being treated unfairly and deserved better. Instead, her complaint only irritated Estroff, and seemed to further delay the prospect of promotion.

67. One day in late February 2023, Hetsko-Shea had blocked off 30 minutes on her calendar to pick up her daughter from the bus stop; Gabriella Fishkind, Director of Sales, scheduled a meeting at that very time.

68. When Hetsko-Shea explained that she had marked herself unavailable, Fishkind scolded her, saying that "these meetings cannot be moved," in a message that included ten of Hetsko-Shea's coworkers. Feeling pressured and humiliated, Hetsko-Shea attended the meeting instead of picking up her daughter. Doades told Hetsko-Shea that when she had taken maternity leave, Estroff had messaged her throughout, expecting her to continue working.

69. Male employees, on the other hand, were only celebrated for fulfilling childcare responsibilities. When a male colleague's child burst into a room during a meeting, he was lauded for being an "amazing dad."

**VIII.   Ceros Conveniently Fires Hetsko-Shea in a Layoff**

70. On April 12, 2023, Berg sent a companywide email announcing an upcoming round of layoffs.

71. Later that day, Hetsko-Shea received a call from Chief Revenue Officer Kevin Croxton who informed her that Ceros was terminating her employment. Croxton explained that he wanted to call her himself to express his appreciation that she had been such an asset to the sales team.

72. At a meeting the next day with Estroff and an HR representative, Hetsko-Shea asked why Ceros was terminating her employment. The HR representative simply told Hetsko-Shea she was "great" and that "it's not personal."

10

73. Hetsko-Shea had continued to outperform her male colleagues. She had closed the most pilots of all the New Business Directors in Quarter One, and the pilots she closed likely guaranteed sales of subscriptions in the following quarter, ensuring her continued successful performance. Yet, Estroff replied, "Your performance and future opportunities were not what we expected them to be . . . From an overall business and team perspective, this is the best decision for the revenue team."

## FIRST CAUSE OF ACTION:
### Interference in Violation of the FMLA

74. Hetsko-Shea repeats and realleges each fact above.

75. Ceros interfered with Hetsko-Shea's right to take leave in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").

76. As a result, Hetsko-Shea did not take protected leave under FMLA and has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

77. Ceros acted willfully, with malice and/or reckless indifference to Hetsko-Shea's rights under FMLA.

78. Hetsko-Shea is entitled to an award of compensatory damages, economic damages, attorney's fees, costs, and liquidated damages in an amount equal to 100 percent of her lost wages.

## SECOND CAUSE OF ACTION:
### Discrimination in Violation of Title VII

79. Hetsko-Shea repeats and realleges each fact above.

80. Ceros unlawfully discriminated against Hetsko-Shea in the terms and condition of her employment on the basis of her gender in violation of Title VII.

11

81.     As a result, Hetsko-Shea has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

82.     Ceros willfully engaged in discriminatory practices with malice and/or reckless indifference to Hetsko-Shea's federally protected rights.

83.     Hetsko-Shea is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

### THIRD CAUSE OF ACTION:
### Retaliation in Violation of Title VII

84.     Hetsko-Shea repeats and realleges each fact above.

85.     Ceros unlawfully retaliated against Hetsko-Shea for making protected complaints of discrimination in violation of Title VII.

86.     As a result, Hetsko-Shea has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

87.     Ceros willfully engaged in discriminatory practices with malice and/or reckless indifference to Hetsko-Shea's federally protected rights.

88.     Hetsko-Shea is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

### FOURTH CAUSE OF ACTION:
### Discrimination in Violation of the NYSHRL

89.     Hetsko-Shea repeats and realleges each fact above.

90.     Ceros unlawfully discriminated against Hetsko-Shea in the terms and conditions of her employment on the basis of her gender, in violation of the NYSHRL.

91.     As a result, Hetsko-Shea has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

92. Ceros willfully engaged in discriminatory practices with malice and/or reckless indifference to Hetsko-Shea's rights.

93. Hetsko-Shea is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

### FIFTH CAUSE OF ACTION:
### Retaliation in Violation of NYSHRL

94. Hetsko-Shea repeats and realleges each fact above.

95. Ceros retaliated against Hetsko-Shea for her protected discrimination complaints in violation of the NYSHRL.

96. The retaliatory actions to which Hetsko-Shea was subjected could have dissuaded a reasonable employee in her position from complaining of discrimination.

97. As a result, Hetsko-Shea has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

98. Ceros willfully engaged in retaliatory practices with malice and/or reckless indifference to Hetsko-Shea's rights.

99. Hetsko-Shea is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

### SIXTH CAUSE OF ACTION:
### Discrimination in Violation of the NYCHRL

100. Hetsko-Shea repeats and realleges each fact above.

101. Ceros unlawfully discriminated against Hetsko-Shea in the terms and conditions of her employment on the basis of her gender, in violation of the NYCHRL.

102. As a result, Hetsko-Shea has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

103. Ceros willfully engaged in discriminatory practices with malice and/or reckless indifference to Hetsko-Shea's rights.

104. Hetsko-Shea is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

### SEVENTH CAUSE OF ACTION:
### Retaliation in Violation of NYCHRL

105. Hetsko-Shea repeats and realleges each fact above.

106. Ceros retaliated against Hetsko-Shea for her protected discrimination complaints in violation of the NYCHRL.

107. The retaliatory actions to which Hetsko-Shea was subjected could have dissuaded a reasonable employee in her position from complaining of discrimination.

108. As a result, Hetsko-Shea has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

109. Ceros willfully engaged in retaliatory practices with malice and/or reckless indifference to Hetsko-Shea's rights.

110. Hetsko-Shea is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

### DEMAND FOR RELIEF

WHEREFORE, it is respectfully requested that the Court enter judgment in Hetsko-Shea's favor, as against Ceros, in an amount to be determined by the trier of fact, as follows:

1) on the First Cause of Action, awarding compensatory damages, economic damages, liquidated damages, attorney's fees, and costs;

2) on the Second, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action, awarding emotional distress damages, economic damages, punitive damages, liquidated damages, attorney's fees, and costs; and

3) granting such other relief as may be just.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP § 38(b), Hetsko-Shea demands a trial by jury.

Dated:     Brooklyn, New York
           September 12, 2024

                                          Olivia Davis
                                          Susan Crumiller
                                          Crumiller P.C.
                                          16 Court St, Ste 2500
                                          Brooklyn, NY 11241
                                          (212) 390-8480
                                          olivia@crumiller.com
                                          susan@crumiller.com
                                          Attorneys for Plaintiff

TO:    Brian Gershengorn
          Fisher & Phillips, LLP
          7 Times Square, Ste 4300
          New York, NY 10036
          (212) 889-9979
          bgershengorn@fisherphillips.com
          Attorneys for Defendant